# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**EUGENE SWEENEY**
    **Petitioner-Defendant,**

v.                         **Case No. 19-C-1326**
                             **(Criminal Case No. 14-CR-20)**

**UNITED STATES OF AMERICA**
    **Respondent-Plaintiff.**

## DECISION AND ORDER

Petitioner Eugene Sweeney moves, pursuant to 28 U.S.C. § 2255, to vacate his convictions and sentence for robbery and firearm possession. For the reasons that follow, I deny his motion.

## I. BACKGROUND

The underlying facts of the case are set forth in the decision of the court of appeals affirming petitioner's convictions on direct appeal:

> On the morning of December 23, 2013, Melissa Baldus arrived at her job as general manager of Flannery's Pub in Milwaukee. She had a bank bag containing cash for the register. She entered Flannery's through an alleyway door and walked downstairs to her office. A man then entered through the same door, came upon Baldus, drew a gun, and demanded the money. Baldus turned over the bank bag. The robber fled, and Baldus called the police. She offered a confident identification of the robber as Eugene Sweeney: Sweeney had previously worked a few short stints at Flannery's, and Baldus said she recognized him from his gestures, body movements, voice, and sunglasses. She also described the gun as black and silver with a red dot on the side. After obtaining Sweeney's address from Flannery's personnel records, three officers—Detective Delgado, Officer Gasser, and Officer Wilcox—went to Sweeney's apartment.
>
> . . . The [apartment] building contains six apartments, two on each of three floors. Sweeney's apartment was on the second floor. The building has exterior doors

> at the front and rear that are usually closed and locked. In the back of the building is a common rear staircase that can be entered from the back of each apartment. Those stairs lead down to the first floor and on down to the basement.
>
> At the bottom of the basement stairs to the left is an opening to a common area. Water heaters are lined up against the wall that runs along the staircase. Past those is a small crawl space underneath the stairs. To the right of the stairs is a shared laundry facility for the building tenants. They make frequent use of the laundry and often allow friends and neighbors to use the laundry as well.
>
> When the police arrived looking for Sweeney, Officer Wilcox covered the rear door of the building. Detective Delgado and Officer Gasser entered through the front door, which had been propped open, and found Sweeney's apartment. After they knocked, the door was eventually opened by Sweeney's girlfriend. While talking with her, the officers received a radio call from Officer Wilcox saying he had caught Sweeney trying to leave by the back door and taken him into custody. At that point, with consent from Sweeney's girlfriend, Detective Delgado entered and searched the apartment. Officer Gasser went through the apartment, out its rear door, and down the common rear staircase.
>
> [Gasser] went down the stairs to the basement and turned left. He went past the water heaters to the crawl space under the stairs. There he found a black plastic bag containing a handgun, magazine, and ammunition. Ms. Baldus, the manager of Flannery's, later testified at trial that the handgun looked like the one used in the robbery. In searches of the apartment, Sweeney's car, and Sweeney himself . . . the officers also found money and a pair of sunglasses matching the description of the robber's.

United States v. Sweeney, 821 F.3d 893, 897-98 (7th Cir. 2016).

Based on this conduct, the government obtained a three-count indictment charging petitioner in count one with obstructing commerce by robbery, 18 U.S.C. § 1951; in count two with brandishing a firearm during a crime of violence, i.e., the robbery charged in count one, 18 U.S.C. § 924(c); and in count three with possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). The case proceeded to trial, and on September 16, 2014, a jury found him guilty on all counts.

At the December 19, 2014, sentencing hearing, I determined that petitioner qualified for

an enhanced term under the Armed Career Criminal Act ("ACCA"), sentencing him to 180 months on counts one and three, running concurrently, and 84 months on count two, running consecutively, for a total of 264 months. On direct appeal, the Seventh Circuit affirmed the convictions but remanded the sentence based on issues with the supervised release conditions. The court further indicated that petitioner could on remand raise a challenge to the ACCA designation. Sweeney, 821 F.3d at 904-05.

On remand, I ultimately determined that the ACCA did not apply, and on August 30, 2018, I imposed a new sentence of 11 months on counts one and three, followed by 84 months consecutive on count two, for a total of 95 months. Petitioner did not appeal the new sentence, but on September 12, 2019, he filed the instant collateral attack under § 2255, raising three claims: (1) a challenge to his felon in possession conviction under Rehaif v. United States, 139 S. Ct. 2191 (2019) (holding that the government must in a § 922(g) prosecution prove that the defendant knew of his status as a prohibited person); (2) a challenge to his § 924(c) conviction under United States v. Davis, 139 S. Ct. 2319 (2019) (holding that the § 924(c) residual clause is unconstitutionally vague); and (3) a claim of ineffective assistance of counsel based on his trial lawyer's failure to (a) effectively cross examine Baldus regarding her identification of the robber based on conflicting descriptions she gave the police and (b) present evidence that the firearm found in the basement of his apartment building could have been possessed by another person discovered by the police hiding in the basement.

On Rule 4 screening, I denied the Davis/§ 924(c) claim and directed the government to file a response on the Rehaif and ineffective assistance claims. In its response, the government argued that petitioner procedurally defaulted his Rehaif claim and that he failed to meet his burden of demonstrating ineffective assistance on either ground alleged. In his

3

reply, petitioner concedes that he cannot overcome the procedural default of his Rehaif claim, and that he cannot show his lawyer provided ineffective assistance in questioning the victim. (R. 9 at 1.) I deem these claims abandoned and do not discuss them further. Petitioner continues to press his claim regarding the other man in the basement. (R. 9 at 1.) I discuss that claim below.

## II.  DISCUSSION

### A.    2255 Standards

Section 2255 provides a basis for attacking a federal sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  Relief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process.  Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007).  "Hence, relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quote marks omitted).

Prisoners are generally barred from litigating under § 2255 claims that could have been raised directly.  See, e.g., McCoy v. United States, 815 F.3d 292, 295 (7th Cir. 2016).  This rule does not apply to claims of ineffective assistance of counsel, which may be raised initially under § 2255.  See Massaro v. United States, 538 U.S. 500, 504 (2003).  To establish a claim of ineffective assistance, the defendant must show (1) that his trial counsel's performance fell

4

Case 2:19-cv-01326-LA   Filed 11/23/21   Page 4 of 11   Document 10

below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To satisfy the first element of the test, the defendant must direct the court to specific acts or omissions by his counsel falling outside the wide range of professionally competent assistance. Blake v. United States, 723 F.3d 870, 879 (7th Cir. 2013). The court's assessment of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. To satisfy the second element, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, such that the proceedings were fundamentally unfair or unreliable. Id. Speculation based on hindsight is insufficient to show prejudice. Hicks v. United States, 886 F.3d 648, 652 (7th Cir. 2018).

**B.     Petitioner's Claim**

In his motion, petitioner indicates that when the officer entered the basement laundry area of the apartment building he discovered an unidentified person hiding in the basement. This person was allowed to the leave, and the officer subsequently found the firearm. Petitioner argues that his lawyer should have cross examined the officers regarding who this individual was or attempted to introduce evidence that this person could have been the robber or, at the very least, the owner of the firearm found in the basement. He states that the police found a partial print and DNA on the gun (which did not match him) and argues that his lawyer should have investigated whether the forensic evidence matched the unknown person found in the basement. "Simply put, defense counsel totally missed the mark when he failed to investigate the unknown person, failed to investigate whether the DNA and print on the firearm belonged to that person, and whether the [description] of that person may have fit the

5

[description] of the suspect first described by Ms. Baldus." (R. 1 at 12.)[1]

In response, the government first notes that counsel's performance must be assessed as a whole, and in this case petitioner was represented by an experienced trial lawyer who filed pre-trial motions (winning, albeit temporarily, a suppression motion before the magistrate judge) and then vigorously defended the case at trial, offering colorable arguments in favor of acquittal despite the strong evidence of petitioner's guilt. (R. 5 at 12-13.) For instance (and contrary to petitioner's now abandoned claim), counsel cross-examined Baldus about the discrepancy between her statement to the police that the robber was 6 feet tall and petitioner's height of 5'8". Counsel also elicited from one of the officers testimony that the victim described the robber as 6 feet tall. (R. 5 at 13.) Counsel returned to the subject during his closing argument. (R. 5 at 14.)

The government acknowledges that the man found in the basement was not mentioned at trial (R. 5 at 14) but states that "there is nothing mysterious—or all that exciting—about the man in the basement." (R. 5 at 15.) According to police reports produced in discovery, the man was Z.N., a white male about 10 years younger than petitioner. Z.N. was interviewed by police, stating that he was in petitioner's apartment when the police knocked on the door and fled to the basement because he was on probation at the time and was not supposed to be in the company of a known felon like petitioner. Z.N. further stated that someone (presumably petitioner) ran down the back stairs right after him. The government contends that counsel knew all of this and reasonably decided not to call Z.N. as a witness. As it was, counsel was

---

[1]Petitioner also references a chain of custody issue counsel failed to pursue, but he does not develop the argument in his original motion or mention it at all in reply. The claim is waived. See White v. United States, 8 F.4th 547, 552 (7th Cir. 2021) (stating that perfunctory and undeveloped arguments are waived).

6

able to argue that the door to the basement was often left propped open, and that people came and went. Counsel further argued that the police did not find petitioner's fingerprints or DNA on the gun. This evidence permitted counsel to suggest that the gun belonged to someone else, without risking harmful testimony from Z.N., who likely would have denied the gun was his and explained that he ran and hid because he was "not suppose[d] to be hanging out with felons." (R. 5-4 at 4.) The government concludes that it was "probably more effective to leave the jury with an open-ended suggestion that the gun belonged to someone else than to try to pin that gun on a specific individual who would then deny having anything to do with it. At the very least, this was the kind of strategic choice that a competent attorney could well have made in representing [petitioner]." (R. 5 at 16.) Regarding petitioner's suggestion that counsel should have investigated Z.N. as a possible robbery suspect, the government notes that none of the other evidence in the case pointed to Z.N.'s involvement in the robbery and even the presence of Z.N.'s DNA/prints on the gun would not have exonerated petitioner (whom the victim positively identified as the robber based on her past working relationship with him). (R. 5 at 16-17.)

I agree with the government that these facts—which petitioner does not meaningfully contest—undermine any claim that counsel performed deficiently by failing to blame "the man in the basement." In any event, even if counsel should have pursued this line of defense, petitioner cannot demonstrate prejudice given the overwhelming evidence of his guilt. See United States v. Hubbard, 22 F.3d 1410, 1422 (7th Cir. 1994). The victim unequivocally identified petitioner, someone she knew, as the robber. This case did not involve the risk of "erroneous identification of a stranger." United States v. Brown, 471 F.3d 802, 804 (7th Cir. 2006). The police also recovered physical evidence linking petitioner to the crime: cash in the

7

same denominations stolen from the bar in petitioner's apartment and on his person; distinctive aviator glasses, which the victim described petitioner wearing both at the time of the robbery and during his prior employment with Flannery's, in petitioner's car; and a firearm resembling the one used in the robbery from the basement of petitioner's apartment building.

In reply, petitioner notes the absence of definitive evidence that the gun found in the basement was the same one used in the robbery. (R. 9 at 2.) This does not meaningfully weaken the government's case, particularly given the victim's testimony regarding the distinctive "red dot" on the side of the weapon.

Petitioner also argues that the police should have been more suspicious of Z.N., a felon on probation who fled when the officers arrived. (R. 9 at 2-3.) But petitioner offers no evidence, only supposition, that further investigation by the police or his lawyer would have cast suspicion on Z.N. See United States v. Lathrop, 634 F.3d 931, 939 (7th Cir. 2011) ("When a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced."). Petitioner notes that the court cannot assume Z.N. would have testified as the government suggests (R. 9 at 3), but he offers no evidence of his own in support of this claim. Counsel did note the possibility someone else left the gun in the basement, and petitioner fails to persuasively explain why pointing the finger specifically at Z.N. was the better course of action. (R. 9 at 4.)

In replying to the government's contention that none of the other evidence in the case pointed to Z.N.'s involvement in the robbery, petitioner contends that if Z.N.'s prints/DNA were on the gun then that would mean the gun charged in counts 2 and 3 was Z.N.'s gun. The

8

question would then be whether Z.N. met the description of the robber.[2]  But nobody investigated these facts. (R. 9 at 5.) As indicated, it is petitioner's burden to provide the court with specific information as to what the omitted investigation would have produced; he fails to do so here. Petitioner concludes that counsel's decision cannot be accepted as strategic given his failure to investigate. (R. 9 at 6.) However, petitioner makes no attempt to rebut the government's prejudice argument. His claim plainly fails on that basis.

Petitioner suggests the court hold an evidentiary hearing, but he does not explain why such a hearing is necessary to decide his motion. (R. 9 at 1.) For a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions. Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996). Petitioner presents no such affidavit.

**C.    Motions for Production**

Along with his original § 2255 petition, petitioner filed a motion for production of documents. (R. 2.) He lists various documents (transcripts, discovery, photos, forensics, grand jury minutes), but he does not explain why production of these materials is necessary to decide his motion. (R. 2 at 2.) He cites 28 U.S.C. § 753(f), which permits the court to order the preparation of transcripts, free of charge to a § 2255 petitioner, if the transcript is necessary to decide the issues presented by the motion, but he does not explain how the statute applies to his case.

Prior to the due date for his reply, petitioner filed a motion for production of transcripts and discovery, and for an extension of time to file the reply. (R. 7.) To the extent the motion

---

[2] Petitioner notes Baldus's statement that the robber was about 6 feet tall but overlooks her statement that Eugene Sweeney was the robber.

9

seeks an extension of time, it will be granted. (R. 7 at 4.)

Petitioner requests an order that the government produce copies of the trial, sentencing, and suppression hearing transcripts in this case. (R. 7 at 2.) He states that the government referenced the trial transcripts in its response and contends that he needs those transcripts to rebut the government's arguments. (R. 7 at 2-3.) He also requests an order that the government provide a complete copy of the discovery in the criminal case. Specifically, he requests copies of all police reports referencing witness statements by the victim, by the police, and any and all references to the man hiding in the basement. He further requests a copy of the PSR, which the government cited as evidence of his knowledge of his felon status. (R. 7 at 3.)

Petitioner has abandoned all of his claims except the ineffective assistance claim related to the man in the basement. There is accordingly no arguable basis for providing materials related to the sentence or prior statements made by the victim. Nor does petitioner establish a basis for discovery of the other materials.

Unlike an ordinary civil case, a § 2255 movant is not entitled to conduct discovery as a matter of course. Rather, the district court may authorize discovery on a showing of "good cause." Rule 6(a), Rules Governing Section 2255 Proceedings. To satisfy Rule 6(a), a petitioner must (1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show "good cause" for the discovery. Hubanks v. Frank, 392 F.3d 926, 933 (7th Cir. 2004). Good cause exists where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 909 (1997). "Good cause, however, cannot exist where the facts alleged do not provide a basis for relief."

10

Hubanks, 392 F.3d at 933. For the reasons stated above, the facts alleged by petitioner do not establish a basis for a finding of prejudice. Accordingly, his discovery motion will be denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion (R. 1) is denied, and this case is dismissed. The clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that petitioner's motion for production of documents (R. 2) is denied.

**FINALLY, IT IS ORDERED** that petitioner's motion for production of transcripts and discovery and for an extension of time to file the reply (R. 7) is denied in part and granted in part as stated above.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 23rd day of November, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge